FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY BRIDGES, | No. 1:15-CV-03160-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 16, 17. Attorney D. James Tree represents Jeff Bridges (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 22. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendants' Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on February 27, 2013, alleging disability since May 10, 2012, due to type 1 diabetes, seizure disorder, kidney issues, depression, anxiety, and high blood pressure. Tr. 209-221, 233, 236. The applications were denied initially and upon reconsideration. Tr. 123-135, 137-154. Administrative

Law Judge (ALJ) Stephanie Martz held a hearing on July 23, 2014, and heard testimony from Plaintiff and vocational expert Trevor Duncan. Tr. 31-67. The ALJ issued an unfavorable decision on August 5, 2014. Tr. 15-25. The Appeals Council denied review on July 8, 2015. Tr. 1-6. The ALJ's August 5, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 8, 2015. ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 39 years old at the alleged date of onset. Tr. 209. Plaintiff completed his GED in 2004. Tr. 237. His work history includes the jobs of banquet server, convenience store clerk, dishwasher, seafood worker at a deli, host, and server. Tr. 38-39, 237. Plaintiff reported he stopped working as of May 10, 2012, because of his condition. Tr. 237.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 5, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 10, 2012, the alleged onset date. Tr. 17.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

At step two, the ALJ determined Plaintiff had the following severe impairments:  diabetes with nephritis and nephropathy, depression, anxiety disorder, and personality disorder.  Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 18.

At step four, the ALJ assessed Plaintiff's residual function capacity as follow:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can sit for about six hours and stand and/or walk about six hours in an eight-hour day with regular breaks.  He has unlimited ability to push/pull within these exertional limits.  The claimant has unlimited ability to climb ramps and stairs but never climb ladders, ropes, or scaffolds.  He has unlimited ability to balance, stoop, kneel, crouch, and crawl.  He should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.  He can understand, remember and carry out simple, routine tasks with superficial contact with coworkers, supervisors and the general public.

Tr. 20.  The ALJ identified Plaintiff's past relevant work as banquet server, host, and waiter and concluded that Plaintiff was not able to perform his past relevant work.  Tr. 24.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, "cleaner, housekeeper," and hand packager.  Tr. 25.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date, May 10, 2012, through the ALJ's decision, August 5, 2014.  *Id.*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's testimony about the severity of his symptoms, and (2) failing to properly weigh the opinion of Jeremiah Crank, M.D. Additionally, briefing from both parties address the issue of whether S.S.R. 14-1p should be applied in this case.

**DISCUSSION**

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 16 at 13-19.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 20. The ALJ reasoned that Plaintiff was less than fully credible because (1) his symptom reports were inconsistent with the medical evidence, (2) his symptom reports were inconsistent with his daily activities, and (3) he held himself out as ready, willing, and able to work by receiving unemployment benefits. Tr. 21-22.

**1.    Inconsistent with Medical Evidence**

In her decision, the ALJ found that Plaintiff's symptom statements were

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

inconsistent with the medical evidence stating that Plaintiff had not developed retinopathy or neuropathy complications, that Plaintiff's only diabetic hospitalization was when he was taking drugs, that his blood sugars ran high rather than low, and that the longitudinal evidence showed Plaintiff's mood and affect had generally been stable despite minimal mental health treatment.  Tr. 21. Plaintiff only challenges the ALJ's reliance on the lack of retinopathy or neuropathy complications.  ECF No. 16 at 14.

This reason for finding Plaintiff less than fully credible is not legally sufficient.  While it cannot serve as the sole reason for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Therefore, Plaintiff's failure to challenge all the evidence supporting this reason is insufficient on its own to disturb the ALJ's determination.  Plaintiff did challenge the lack of retinopathy and neuropathy as evidence of a lack of severity.  ECF No. 16 at 14.  As discussed below, retinopathy and neuropathy are only two of several potential complications of diabetes.  *See* 20 C.F.R. Part 404, Subpart P, App. 1 § 9.00.  Plaintiff did not allege retinopathy or neuropathy as impairments preventing work.  Tr. 46, 236.  The ALJ relied on only two out of several possible complications of diabetes as an indicator of severity, and substituted her medical judgement for a doctor's, which is impermissible.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).  Therefore, this falls short of the specific, clear and convincing standard.

### 2.    Daily Activities

The ALJ's second reason for finding Plaintiff less than fully credible, that Plaintiff's activities cast doubt on his alleged limitations, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able

to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ found that Plaintiff's activities of exercising regularly, going fishing by himself, volunteering, and attending a weekly Wiccan group was inconsistent with his reported limitations. Tr. 22.  However, it is unclear how these activities were inconsistent with the testimony the ALJ summarized earlier in the opinion. Tr. 20.  The ALJ did not address how these activities were inconsistent with Plaintiff's reported difficulties controlling his blood sugar levels, the number of people these activities involved as inconsistent with Plaintiff's discomfort around people, or the rate at which Plaintiff was involved with these activities as inconsistent with his reported fatigue.  Therefore, this reason fails to meet the specific, clear and convincing standard.

### 3.    Unemployment Benefits

The ALJ's third reason for rejecting Plaintiff's credibility, that Plaintiff held himself out as ready, willing, and able to work, by receiving unemployment benefits, is not legally sufficient.  The receipt of unemployment benefits can affect a person's claim for social security benefits, however, there must be evidence to support that the claimant held himself out as ready, willing, and able to work full-time. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-1162 (9th Cir. 2008); *see also* Wash. Rev. Code § 50.20.119 (setting forth part-time work exception for unemployment benefits).  Here, there is no evidence whether Plaintiff held himself out as available for part-time or fulltime work. *See* Tr. 53-

55.  Therefore, this reason fails to meet the specific, clear and convincing standard.

Even though Plaintiff's briefing failed to address all the reasons the ALJ provided for rejecting his symptom statements, the errors addressed above are sufficient to justify that the case be remanded for the ALJ to make a new determination in accord with S.S.R. 16-3p.

**B.    Jeremiah Crank, M.D.**

Plaintiff challenges the weight given to Dr. Crank's opinion.  ECF No. 16 at 7-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at, 631.  Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion.  *Lester*, 81 F.2d at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

Dr. Crank examined Plaintiff on February 12, 2013, and completed a Physical Functional Evaluation form for the Washington State Department of Social and Health Services. Tr. 412-420. Dr. Crank stated that Plaintiff's chief complaints and reported symptoms were diabetes with multiple hospitalizations due to diabetic ketoacidosis (2-3 episodes of diabetic ketoacidosis per year for ten years), arrhythmias in the hospital, intensive care unit stays, and that the hospitalist recommended a nuclear stress test. Tr. 412. He diagnosed Plaintiff with labile, uncontrolled diabetes with frequent hypoglycemic episodes and occasional hypoglycemic induced seizures which can occur unpredictably. Tr. 413. Dr. Crank opined that Plaintiff was severely limited due to the inability to predict hypoglycemic episodes and seizures. Tr. 414. Severely limited is defined as "[u]nable to meet the demands of sedentary work." *Id*. Dr. Crank stated that he estimated the severe limitation would persist with available treatment for twelve months. *Id*.

The ALJ gave this opinion, "little weight" because it was not well supported, finding that (1) Plaintiff had not developed peripheral neuropathy, (2) he was still able to exercise regularly and go fishing, (3) Plaintiff would be able to care for his condition during regular breaks, (4) Plaintiff's statements to Dr. Crank regarding the frequency of his hospitalizations was unsupported by the record, and (5) Dr. Crank's finding of frequent hypoglycemic episodes was also unsupported by the record. Tr. 23. Plaintiff alleges that the clear and convincing standard applies as Dr. Crank's opinion is uncontradicted. ECF No. 16 at 10.

The ALJ's first reason for rejecting Dr. Crank's opinion, that Plaintiff had not developed peripheral neuropathy, is not legally sufficient.  Plaintiff did not allege that neuropathy was an impairment that limited his ability to work at application or at the hearing. Tr. 46, 236.  In her decision, the ALJ implied that Plaintiff's diabetes could not be as severe as he alleged because there was no evidence of neuropathy.  Tr. 21, 23.  However, neuropathy is not the only complication stemming from diabetes.  Listing 9.00 Endocrine Disorders addresses diabetes and its complications including (1) diabetic ketoacidosis, which can result in cardiac arrhythmias, cerebral edema, and seizures, (2) chronic hyperglycemia, which can lead to peripheral neurovascular disease, diabetic retinopathy, coronary arty disease, peripheral vascular disease, diabetic gastroparesis, diabetic nephropathy, poorly healing bacterial and fungal skin infections, cognitive impairments, depression, anxiety, *and diabetic peripheral and sensory neuropathies*, and (3) hypoglycemia, which can result in seizures, loss of consciousness, altered mental status, and cognitive deficits.  *See* 20 C.F.R. Part 404, Subpart P, App. 1 § 9.00.  By the ALJ relying on a single complication of diabetes as an indicator of severity, she was substituting her medical judgement for a doctor's, which is impermissible.  *See Schmidt*, 914 F.2d at 118.  Therefore, this reason falls short of either the clear and convincing or the specific and legitimate standards.

The ALJ's second reason for rejecting Dr. Crank's opinion, that he was still able to exercise regularly and go fishing, is also not legally sufficient.  A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition.  *See Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990).  In May of 2013, Plaintiff reported to Kirk D. Strosahl, Ph.D., that he was exercising regularly and going fishing by himself on regular occasions.  Tr. 604.  In July of 2013, Plaintiff reported to Michael Aquilino, MHC, that he spent his time walking the dog and fishing.  Tr. 595.  In January of 2014, Plaintiff

reported to Vicente Lopez, M.Ed., that he was leaving his house to exercise.  Tr. 671.  At the hearing, Plaintiff reported that he tried to exercise by going for walks and he liked to go fishing at local lakes.  Tr. 49.  The ALJ found that going for walks and going fishing was inconsistent with Dr. Crank's opinion.  Tr. 23.  However, she did not state how these activities were inconsistent with Dr. Crank's finding that Plaintiff was unable to meet the demands of sedentary work due to an inability to predict hypoglycemic episodes and seizures.  *See* Tr. 414.  The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-422.  Therefore, this reason fails to meet the lessor standard of specific and legitimate.

The ALJ's third reason for rejecting Dr. Crank's opinion, that Plaintiff would be able to take care of his condition during regular breaks, is not legally sufficient.  Again, a claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition.  *See Curry,* 925 F.2d at 1130.  At the hearing, Plaintiff testified that his current testing regimen was as follows:

> I'll test in the morning about 8:00, 9:00.  I'll take my insulin and my pills and all that, and I will eat.  And then, about 11:00, noon, like that, I'll do the same thing, I'll test and do my pills and my insulin-dependent and all that, eat.  And then I'll -- dinner's like about 5:00, 6:00, and that's when I'll do my pills and my insulin again.  And then, before I go to bed, like before, like, 10:00, 11:00, I'll test again.  And then I'll, like, at 2:00 I'll test again.

Tr. 59.  However, Dr. Crank's opinion was not that Plaintiff's testing regimen and fatigue precluded work, but that Plaintiff's unpredictable hypoglycemic episodes and seizures precluded work.  *See* Tr. 414.  The ALJ actually found Plaintiff compliant with his medications, but that these episodes would occur regardless of treatment.  Tr. 414, 418. Therefore, the ALJ failed to assert how Plaintiff's

testimony was inconsistent with Dr. Crank's opinion, which means this reason falls short of the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-422.

The ALJ's forth reason for rejecting Dr. Crank's opinion was that Plaintiff's statements to Dr. Crank regarding the frequency of his hospitalizations is unsupported by the record. The ALJ may reject a medical opinion that is inadequately supported by clinical findings, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), and she may reject an opinion that it relies heavily on a claimant's unreliable self-report, *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Plaintiff reported to Dr. Crank that he had required multiple hospitalizations due to diabetic ketoacidosis at the rate of two to three times per year for the last ten years. Tr. 412. However, the record only contained a single hospitalization for diabetic ketoacidosis on December 28, 2013. Tr. 322-329. Plaintiff reported to social security that he was seen "several" times at the emergency room at Yakima Regional Medical Center in 2011 and 2012 for seizures and diabetes and that these records were not gathered. Tr. 241-242. The Case Development Sheet in the file shows that agency employees requested records from Yakima Regional on March 19, 2013. Tr. 464. The request was for all records from May of 2012 to March 19, 2013. *Id*. The request was returned to the state agency on March 21, 2013, stating there were no medical records for the requested time period. Tr. 464, 466-470. Considering the case is being remanded for additional proceedings to address Plaintiff's symptom statements, should Plaintiff's historical rate of hospitalization be a reason to support any of the ALJ's determinations, the outstanding records must be gathered and made a part of the file before the evidence, or lack thereof, can be relied upon.

The ALJ's fifth reason for rejecting Dr. Crank's opinion, that Dr. Crank's finding of frequent, work-preclusive hypoglycemic episodes is also unsupported by the record, is legally sufficient. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions.

*Batson*, 359 F.3d at 1195; *see also Lester*, 81 F.3d at 831 (the ALJ may give weight to consulting opinions "only insofar as they are supported by evidence in the case record."). Dr. Crank stated that Plaintiff was unable to meet the demands of sedentary work due to the inability to predict hypoglycemic episodes and seizures and that this would last twelve months with available medical treatment. Tr. 414. The record does not show a single seizure resulting from hypoglycemia. The Court recognizes that in January of 2013, Plaintiff reported to Jhoe Dumlao, M.D., that he experienced dizziness from hypoglycemia five times a week, but described the hypoglycemic episodes as mild. Tr. 433. By March of 2013, Plaintiff reported only two hypoglycemic episodes a week to Dr. Dumlao, but again described them as mild. Tr. 519. The evidence failed to show how these mild episodes would preclude work. Dr. Crank's opinion of unpredictable hypoglycemic episodes and seizures preventing work is not supported by the record. Therefore, this meets the clear and convincing standard.

Considering the case is being remanded for the ALJ to address Plaintiff's symptom statements, three of the ALJ's reasons for rejecting Dr. Crank, and evidence is missing supporting a fourth reason the ALJ provided for rejecting the opinion, Dr. Crank's opinion is to be readdressed on remand.

**C.    S.S.R. 14-1p**

Plaintiff challenges the ALJ's refusal to apply S.S.R. 14-1p to Plaintiff's fatigue. ECF No. 16 at 14-15; ECF No. 19 at 2-3. The ALJ stated "[t]he claimant's representative argued that the claimant's fatigue should be evaluated under SSR 14-1p. However, the claimant has never been diagnosed with chronic fatigue syndrome by an acceptable medical source and therefore the provisions of SSR 14-1p do not apply." Tr. 21. While all the parties discuss the ALJ's refusal to apply S.S.R. 14-1p as part of the credibility determination, the Court views it as a separate issue. While the ALJ addressed it in the context of his credibility determination, it does not appear to be a reason the ALJ rejects Plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

1  credibility.

2        Social Security issued S.S.R. 14-1p to provide guidance on how to develop

3  evidence to establish that a claimant has a medically determinable impairment of

4  chronic fatigue syndrome and how the agency will evaluate chronic fatigue

5  syndrome in disability claims.  *See* S.S.R. 14-1p.  This S.S.R. specifically applies

6  to the impairment of chronic fatigue syndrome.  *Id*.  While Plaintiff's counsel was

7  free to request the ALJ consider Plaintiff's fatigue in an analogous way to that set

8  forth in the ruling, the ALJ did not error by finding that the S.S.R. was not

9  applicable where the condition was not an issue in the case.  That being said, the

10 ALJ must form the residual functional determination considering symptoms from

11 all of Plaintiff's impairments.  *See* S.S.R. 96-8p.  Upon remand, if the ALJ finds

12 Plaintiff's reported symptoms of fatigue as consistent with the overall record, those

13 symptoms would need to be associated into the residual functional determination.

14 *See* S.S.R. 16-3p.

15                              **REMEDY**

16        The decision whether to remand for further proceedings or reverse and

17 award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

18 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

19 where "no useful purpose would be served by further administrative proceedings,

20 or where the record has been thoroughly developed," *Varney v. Secretary of Health*

21 *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

22 by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

23 (9th Cir. 1990); s*ee also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

24 (noting that a district court may abuse its discretion not to remand for benefits

25 when all of these conditions are met).  This policy is based on the "need to

26 expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are

27 outstanding issues that must be resolved before a determination can be made, and it

28 is not clear from the record that the ALJ would be required to find a claimant

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine Plaintiff's credibility regarding his symptom reporting, address Dr. Crank's opinion, and make a new residual functional capacity determination considering all Plaintiff's impairments. Additionally, the ALJ will take testimony from a medical expert and vocational expert upon remand.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 16**, **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED September 19, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15